IN THE UNITED STATES DISTRICT
COURT FOR THE DISTRICT OF
MASSACHUSETTS

GLENN MISIPH &
AASK SERVICES, LLC,

Plaintiffs,

v.

360° PAINTING, LLC, f/k/a
360° PAINTING, INC.,
PREMIUM SERVICE BRANDS, LLC
& PAUL FLICK,

Defendants.

CIVIL ACTION NO. 1:22-CV-11778

**DEFENDANTS' MOTION TO EXCLUDE THE EXPERT TESTIMONY AND OPINIONS OF PLAINTIFFS' EXPERT, ELISABETH O. DA SILVA**

Defendants 360 Painting, LLC ("*360 Painting*"), Premium Service Brands, LLC ("*PSB*"), and Paul Flick ("*Mr. Flick*")(collectively, "*Defendants*") submit this Motion to Exclude the Expert Testimony and Opinions of Plaintiffs' expert witness, Elisabeth O. da Silva ("*Ms. da Silva*"). The bases for the Motion are set forth below.

## I. INTRODUCTION

Plaintiffs' Complaint sought rescission damages for Counts I-IV in the amount of the initial franchise fee ($54,000) plus all royalty payments, marketing fund and call center payments, other payments made by Plaintiffs to 360 Painting in connection with the Franchise Agreement.[1] In addition, Plaintiffs sought damages in the amount of "at least $217,669" in connection with Counts I, II, III, IV, V, and VI, plus treble damages and attorneys' fees under

[1] ECF No. 1, p. 2..

Chapter 93A.[2] Ms. da Silva's expert report concluded that Plaintiffs' damages were more accurately pegged at 1,480,000,[3] or seven times greater than the ad damnum. Although benefit-of-the-bargain damages are available for plaintiffs in cases of intentional misrepresentation in Massachusetts,[4] the law does not expectancy damages for misrepresentation plaintiffs if he or she did not actually receive something of lesser value as a consequence of the misrepresentation.[5] Misiph and AASK are both such plaintiffs. Neither can show that any alleged inaccuracy, whether appearing in an FDD or any other marketing material, caused Misiph's 360 Painting franchise to perform worse in any way. The lack of any causal connection between Defendants' alleged acts or omissions and Plaintiffs' damages pervades Ms. da Silva's expert opinions and would certainly affect her testimony.

Ms. da Silva is expected to testify that AASK suffered lost opportunity cost of approximately $390,440 from its formation through September 26, 2022, lost profits of $1,478,079 for the ten-year franchise period beginning in August 2018, and $405,640 in "but-for" profit losses incurred after the termination of the Franchise Agreement on September 26, 2022.[6] The Court should exclude this testimony as unreliable and divorced from any meaningful, fact-based association with the performance Misiph and AASK actually achieved within the 360 Painting franchise system from 2018 to 2022.

## II. LEGAL STANDARD

Federal Rule of Evidence 702 provides:

If scientific, technical, or other specialized knowledge will assist the trier of fact to

---

[2] *Id.*

[3] Ex. 1, Report of E. da Silva (the "ES Report").

[4] *Rice v. Price*, 340 Mass. 502, 508 (1960).

[5] *See Twin Fires Inv., LLC v. Morgan Stanley Dean Witter & Co.*, 445 Mass. 411, 425 (2005) ("Our courts have consistently limited the award of benefit of the bargain damages to cases of intentional misrepresentation where the person who was the target of the misrepresentation has actually acquired something in a transaction that is of less value than he was led to believe it was worth when he bargained for it.").

[6] ES Report at p. 7.

> understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

The Supreme Court assigned the trial court the role of a gatekeeper for expert evidence to ensure it is both reliable and relevant.[7] In this role, the trial judge ensures the fact-finding process is not distorted by junk science or fake expertise.[8] The two "gateposts" for admissible expert testimony are that the witness be sufficiently qualified by "knowledge, skill, experience, training, or education"[9] and that the scientific testimony is both relevant and reliable.[10]

Trial judges "have considerable leeway in deciding in a particular case how to go about determining whether particular expert testimony is reliable."[11] In testing a particular method for reliability, a court may consider whether the method (1) "can be (and has been) tested," (2) is subject to peer review and publication, (3) has a 'known or potential rate of error,' and (4) is generally accepted in the field.[12] The First Circuit has gone so far as to describe the trial judge's "duty to insulate the jury from expert testimony when reliance on authoritative studies and methods threatens to mask the lack of an adequate fit."[13]

Ms. da Silva's opinions are tested in the context of Massachusetts' background law for a plaintiff's claim to lost profits. Her expert testimony can only be admitted insofar as her methods exceed the standard for proving lost profits; if they fall short of that standard, her opinions are not helpful to the jury. Proving damages requires a plaintiff to demonstrate losses to a reasonable

---

[7] *Daubert v. Merrell Dow Pharmaceuticals*, 509 U.S. 579 (1993).
[8] *Kumbo Tire Co. v. Carmichael*, 526 U.S> 137, 159 (1999) (Scalia, J., concurring).
[9] Fed. R. Civ. P. 702.
[10] *Daubert*, 509 U.S. at 589.
[11] *LightLab Imaging, Inc. v. Axsun Techs., Inc.*, 469 Mass. 181, 190 (2014), *quoting Kumho Tire*, 526 U.S. at 152.
[12] *Daubert*, 509 U.S. at 593-94.
[13] *Samaan v. St. Joseph Hosp.*, 670 F.3d 21, 35 (1st Cir. 2012).

degree of certainty.[14] Expert testimony should not be based on conjecture or speculation from an insufficient evidentiary foundation.[15]

Massachusetts trial judges have frequently applied these standards to testimony from experts which predict future profits from new business ventures.[16] Prospective profits can be recovered where their loss appears to have been the direct result of the wrong complained of and when they are proven to a reasonable degree of certainty.[17] Lost profits are not recoverable when they are "remote, speculative, hypothetical, and not within the realm of reasonable certainty." Modeling lost profits runs the risk of becoming unreliable where it simply shows projections of sales and historic returns without consideration of the many factors which bear on a company's financial performance.[18] "Damages for lost profits are recoverable only when proof is made 'with sufficient certainty.'"[19]

Plaintiffs have designated Ms. da Silva as their expert witness and must demonstrate that her opinions will assist the trier of fact in light of these principles.[20] To do so, they must:

> demonstrate[] to the court that it is more likely than not that: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert's opinion reflects a reliable application of the principles and methods to the facts of the case."[21]

"[T]he proponent of the expert testimony must establish these reliability requirements by a

---

[14] *Novel Iron Works, Inc. v. Wexler Construction Co.*, 26 Mass. App. Ct. 401, 412-13, *rev. denied*, 403 Mass. 1104 (1988).
[15] *See Kennedy v. U-Haul Co.*, 360 Mass. 71, 73-74 (1971).
[16] *See Lowrie v. Castle*, 225 Mass. 37, 51-52 (1916); *Busy Bee Confectionary Co. v. Broadway Natl. Bank*, 258 Mass. 360, 363 (1927); *Narragansett Amusement Co. v. Riverside Park Amusement Co.*, 260 Mass. 265, 281 (1927); *Schwanbeck v. Federal-Mogul Corp.*, 31 Mass. App. Ct. 390, 416-17 (1992), S.C., 412 Mass. 703, 592 N.E.2d 1289 (1992).
[17] *Lowrie*, 225 Mass. at 51-52.
[18] *Augat, Inc. v. Aegis, Inc.*, 417 Mass. 484, 488 (1994).
[19] *Id., quoting Jet Spray Cooler, Inc. v. Crampton*, 377 Mass. 159, 181 (1979).
[20] *Commonwealth v. Shanley*,
[21] *U.S. v. Litang Liang*, No. 1:23-cr-10130-IT, 2025 U.S. Dist. LEXIS 6937, *7-8 (D. Mass. Jan. 14, 2025).

preponderance of the evidence[.]"[22] Plaintiffs cannot do so. Ms. da Silva's opinions of damages are disconnected from any act or omission of the Defendants and, for this reason and others, are speculative. The Court must exclude them under *Daubert*.

## ARGUMENT

**1. Ms. da Silva's "But For" damages opinions should be excluded because they do not fit the pleaded claims and remedies in the Complaint.**

Plaintiffs' prayer for relief specifically seeks rescission of the Franchise Agreement as a remedy for Counts I-IV and a return of "all funds paid" to the franchisor.[23] Ms. da Silva's "but for" opinions calculate the amount of ten (10) years of hypothetical franchise profits based on franchisor projections and explicitly counterfactual circumstances she describes as "expected support" from 360 Painting. Her theory is based on expectation damages and lost profits, not a status-quo-ante rescission measure of relief requested by the Complaint requests. During her deposition, Ms. da Silva could not explain how 360 Painting caused Misiph to underperform the average franchisee.[24] Ms. da Silva's "but for" damages opinions do not fit Plaintiffs' claims and should be excluded for that reason.

**2. Ms. da Silva's damages methodology is unreliable and inadmissible under Rule 702.**

In the portion of the ES Report which calculates Misiph's "But For Damages" as $1,478,079, Plaintiffs' expert states that she was "assuming Misiph was able to operate the franchise with the expected support from the franchisor and for the full 10-year franchise period."[25] Her expert omits any explanation of what "expected support" meant in measurable, operational terms, does not test alternative causes like market conditions, poor management, COVID-era conditions, local competition, capitalization constraints, or labor constraints, and makes no attempt

---

[22] *Doucette v. Jacobs*, 106 F.4th 156, 169 n.17 (1st Cir. 2024).
[23] ECF No. 1, p. 22.
[24] Ex. 2, Tr. at 44:11 – 45:19.
[25] Ex. 1, p. 8.

to justify either the 10-year or 5-year projection timelines used in her calculations.[26] Her failure to link these projections to any type of system-wide benchmark is particularly noteworthy given that Misiph's tenure as a 360 Painting franchisee lasted only slightly over four years.[27]

Morever, Ms. da Silva's expert report does *not attempt to isolate the damages attributable to any specific alleged misrepresentation*, nor does she compare the effect of any such misrepresentation to any other business risk for benchmarking or comparative analysis. She subsequently testified in her deposition that the only information made available to her about 360 Painting from 2018 onward was through interviews with Misiph.[28] Even worse, a footnote in the ES Report makes clear that Plaintiffs' expert relied on a business plan template (1st Year Business Plan.xlsx) to calculate gross revenue and expenses for a 360 Painting franchise.[29] These figures were used despite more accurate internal tracking metrics and data summaries being made available to Misiph and his counsel through discovery in this case. Rather than using those accurate and differentiated data sources to measure league-average franchise performance and adjusting it based on Misiph-specific factors, Ms. da Silva used an industry-wide "bizminer" report which sampled data from franchised and non-franchised companies within a wide band of employee counts.[30] Ms. da Silva's 1.5MM damages figure is precisely the type of "unsupported speculation" the trial judge must stop at the gate.

In sum, Ms. da Silva's methods assumed: (i) a 10-year operation; (ii) an unspecified and unquantified increase in corporate support for Misiph; (iii) gross revenue and expenses benchmarks she seemingly accepted without adjustment from a business plan template provided

---

[26] *Id.*
[27] *Id.* at 4-5 (opened in August 2018 and terminated in September 2022).
[28] Ex. 2, Tr. at 46:5 – 46:20.
[29] *Id.* at 8, fn.7. In the section of the report titled "Summary of the Dispute", Ms. da Silva explains that the business plan template was provided to Misiph by David Raymond, an employee of 360 Painting, upon Misiph's request so he could "begin the financing process" for his new franchise. *Id.* at 5.
[30] Ex. 1 at 9; Ex. 2 at Tr. 51:7 – 51:18.

to Misiph and which included no specific information at about his franchise; (4) industry-wide . The expert analysis is unmoored from the actual performance observed from August 2018 through September 2022, which was the best evidence of what Misiph could achieve as an operator of a painting franchise company. The narrow scope of her data-gathering also affected the results. During her deposition, Ms. da Silva acknowledged that she had omitted an $80,000 salary in her calculations because she was unaware that Mr. Misiph did not lose that income stream until sometime well after she believed it to have occurred.[31] She neglected to gather any information about his historical savings rate.[32]

**3. Ms. da Silva's damages opinions fail the Daubert "fit" test with respect to Count III (Negligent Misrepresentation).**

Massachusetts law distinguishes between intentional misrepresentation or fraud, on the one hand, and negligent misrepresentation, on the other. Expectancy damages are available in the first case, but not the second.[33] Damages for negligent representation are thus calculated as the difference between the purchase price of the 360 Painting franchise and its actual value, plus any other pecuniary loss suffered from reliance on the negligent misrepresentation.[34] Ms. da Silva's report includes no evidence as to what Misiph's 360 Painting franchise was worth upon his purchase of it. Accordingly, her testimony should be excluded as unhelpful to the finder of fact with respect to Count III.

**4. Ms. da Silva's "FDD Misstatements" and "mitigation" opinions should be excluded as improper and unhelpful.**

Near the end of her report, Ms. da Silva offers two opinions which crystallize how widely

---

[31] Ex. 2, Tr. at 47:15 – 48:1.
[32] *Id.* at Tr. 49:2 – 49:17.
[33] *See Anzalone v. Strand*, 14 Mass. App. Ct. 45, 49 (1982) (determining that the benefit-of-the-bargain rule rule was not the proper measure of damages in negligent misrepresentation cases and applying the traditional 'out of pocket' damages measure).
[34] *Id, citing* Restatement (Second) of Torts, § 552B(1).

she was willing to range outside of her expertise. First, she relies on assumptions about how a marketing fund should mathematically correlate to systemwide franchisee sales and location counts to re-calculate systemwide revenue averages for 2016 and 2017, then argues her results are "inconsistent" with the FDD provided to Misiph in April 2018.[35] Her testimony is not tied to any damages computation; the testimony is also essentially jury argument about whether documents are "consistent", which the factfinder can assess without expert assistance. Her use of the word "material" ("The average gross revenue per franchisee. . .is *materially less* than the gross revenue average stated in the April 20, 2017 FDD") further highlights the degree to which Plaintiffs' proposed expert testimony exceeded its purpose. Rule 702 does not permit experts as narrators of legal argument.

Second, Ms. da Silva opines that "Misiph has a duty to mitigate damages and did, in fact, take reasonable, non-burdensome steps to avoid losses."[36] Ms. da Silva has no expertise, education, or training in assessing the legal duty to mitigate, and her anecdotal recitation of Misiph's employment history includes not a single number, calculation, or projection.[37] At her deposition, in response to the question "What part of your training or background informs your assessment of whether or not someone acted promptly to mitigate losses?", Ms. Da Silva testified, "You know, my economic damages, experience, my experience with damages in the context of wrongful termination, would contribute to my ability to analyze that."[38] She admitted that she did not perform any vocational assessment of Misiph to determine how long he should expect to have remained unemployed post-termination.[39] Her mitigation of damages testimony must be excluded.

---

[35] *Id.* at 9.
[36] *Id.* at 10.
[37] *See id.*
[38] Ex. 2, Tr. September 30, 2025, Deposition of Elizabeth O. da Silva ("Tr.") at 40:20 – 41:1.
[39] Ex. 2, Tr. at 42:3 – 42:22.

## CONCLUSION

For these reasons, Defendants ask the Court to exclude admission of Ms. da Silva's expert report and any testimony by her at trial based on the unreliable methods and premises set forth in her report.

DATED: January 26, 2026

Respectfully Submitted,

**360 PAINTING LLC**
**PREMIUM SERVICE BRANDS LLC**
**PAUL FLICK**

*/s/ Evan D. Mayo*
Evan D. Mayo, Esq. (admitted *pro hac vice*)
Mayo Law Group PLLC
425 Locust Avenue, Suite 201
Charlottesville, Virginia 22902
Telephone: (434) 951-2222
Facsimile: (434) 951-0666
evan@mayolawgroup.com
Jeffrey M. Rosin, BBO #629216
O'Hagan Meyer, PLLC
140 Kendrick Street, Bldg. C
Needham, MA 02494
Telephone: (617) 843-6800
Facsimile: (617) 843-6810
Email: jrosin@ohaganmeyer.com

**CERTIFICATE OF SERVICE**

I, Evan D. Mayo, hereby certify that on January 26, 2026, I caused the foregoing document to be served on all counsel of record via email.

*/s/ Evan D. Mayo*
Evan D. Mayo