UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| GLENN MISIPH & <br> AASK SERVICES, LLC, <br><br> Plaintiffs, <br><br> v. <br><br> 360° PAINTING, LLC, f/k/a <br> 360° PAINTING, INC., <br> PREMIUM SERVICES BRANDS, LLC, <br> & PAUL FLICK, <br><br> Defendants. | Civil Action No. 22-11778-JCB |

ORDER ON THE PARTIES' MOTIONS IN LIMINE
[Docket Nos. 177, 186]

March 3, 2026

Boal, M.J.

Plaintiffs Glenn Misiph and AASK Services, LLC, and defendants 360° Painting, LLC, Premium Service Brands, LLC, and Paul Flick have filed cross motions in limine to exclude expert testimony. Docket Nos. 117; 186. For the following reasons, I deny Plaintiffs' motion and grant in part and deny in part Defendants' motion.[1]

I.  BACKGROUND

This action arises out of a franchise relationship between the plaintiffs Glenn Misiph and AASK Services, LLC, (together "Plaintiffs"), and the franchisor defendants, 360° Painting, LLC, Premium Service Brands, LLC, and Paul Flick (together "Defendants"). Docket No. 1 ¶ 16.

---

[1] On August 26, 2024, the parties consented to the jurisdiction of a U.S. Magistrate Judge for all purposes. Docket Nos. 63, 64.

1

Plaintiffs allege that Defendants engaged in fraudulent misrepresentation through marketing materials and Franchise Disclosure Documents ("FDD").  See id. ¶¶ 53-75.  Plaintiffs seek various forms of damages.  See id. at 22; see also Docket No. 186-1 at 7.

To support their claims, Plaintiffs retained Elisabeth O. da Silva, a forensic accountant and damages expert, to calculate, among other things, their damages claims.  Docket No. 177 at 2.  Da Silva is a certified public accountant ("CPA") and is certified in financial forensics ("CFF") with over 25 years of experience in forensic accounting, auditing, and economic damage calculations.  Docket No. 201-1 at 4.  Her professional history includes investigating complex financial disclosures and serving as an expert witness for private litigants and the Securities and Exchange Commission.  Id.  Da Silva also served as a neutral arbitrator in accounting and contract disputes.  Id.  In her report, Da Silva addresses Plaintiffs' lost opportunity costs, actual and expected profits, and efforts to mitigate damages.  Docket No. 186-1 at 7.  The report also evaluates the accuracy of the financial figures disclosed by 360° Painting in its 2017 FDD.  Id. at 10-11.

In response, Defendants engaged Edward J. Herbst, a CPA and CFF with professional experience in both the private sector and federal law enforcement.  Docket No. 201-2 at 4-6.  He previously served as a managing director in the forensics practice of a private accounting firm and held a senior executive service position within the Federal Bureau of Investigation.  Id. at 4.  His experience includes calculating economic losses in financial crime investigations and providing testimony in federal court regarding fraud and money laundering schemes.  Id. at 4-6.  Herbst provided a rebuttal to da Silva's report assessing her premises, methodology and approach, and rationale.  Docket No. 201-2.  His report concluded that da Silva's analysis relied

on inaccurate assumptions and failed to account for the specific financial and operational realities of the franchise.  Id. at 16.

II.     STANDARD OF REVIEW

Daubert "establishes that before admitting expert testimony, the trial court must fulfill its 'gatekeeping role' by making an independent determination that the expert's proffered . . . knowledge is both reliable and relevant."  United States v. Crater, 93 F.4th 581, 590 (1st Cir. 2024) (citing to Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579 (1993)).  For expert testimony to be admissible, the witness must be shown to be sufficiently qualified by "knowledge, skill, experience, training, or education."  Fed. R. Evid. 702.  In addition, "expert testimony may be admitted into evidence only if it is 'based on sufficient facts or data,' is 'the product of reliable principles and methods,' and 'reflects a reliable application of the principles and methods to the facts of the case.'"  Rodriguez v. Hosp. San Cristobal, Inc., 91 F.4th 59, 70 (1st Cir. 2024) (citing Fed. R. Evid. 702).

The party seeking to introduce expert evidence has the burden of establishing both its reliability and its relevance.  Rodriguez, 91 F.4th at 70 (citation omitted).  The party must also demonstrate its compliance with Rule 104(a)'s preponderance standard.  Fed. R. Evid. 702 Advisory Committee Note to 2023 amendment.  However, "proponents 'do not have to demonstrate to the judge by a preponderance of the evidence that the assessments of their experts are correct, they only have to demonstrate by a preponderance of the evidence that their opinions are reliable . . .'" Id.

III.    ANALYSIS

    A.  Elisabeth O. da Silva

Defendants seek to exclude all of da Silva's testimony due to: (1) lack of "fit" between da Silva's calculations and Plaintiffs' claimed damages; (2) unreliable methodology; and (3) improper legal or narrative conclusions. Docket No. 186 at 5, 7. For the reasons set forth below, the motion is granted in part and denied in part.

    1.  *The "Fit" Of Damages*

Defendants argue that da Silva's "but-for" damages testimony does not "fit" the case because Plaintiffs seek rescission damages, and da Silva's report calculates expectation damages (lost profits). Docket No. 186 at 5. Defendants also contend that because da Silva's report included no evidence as to the worth of Plaintiffs' franchise for purposes of proving damages related to negligent misrepresentation, her testimony should be excluded entirely. Docket No. 186 at 7. These arguments are unpersuasive.

In her report, da Silva provides two damages methods. Docket No. 186-1 at 7. The first method provides a damages calculation that would restore Plaintiffs to the economic position they would have occupied absent Defendants' representations, the so-called unwind damages theory. Id. The second method accounts for Plaintiffs' investment in the franchise and provides a damages calculation that would put Plaintiffs in the position they would have been in had 360° Painting fulfilled its obligations, the so-called but-for damages theory. Id.

Under Massachusetts law,[2] rescission seeks to return the parties to their respective positions had the contract never happened. See May v. SunTrust Mortg., Inc., 467 Mass. 756,

---

[2] Both parties cite to Massachusetts law. This Court need go no further in terms of choice-of-law analysis. See Hershey v. Donaldson, Lufkin & Jenrette Sec. Corp., 317 F.3d 16, 20 (1st Cir.

763-764 (2014).  Da Silva's unwind damages theory seeks to do just that.  In her calculation, da Silva calculates Misiph's opportunity costs for the five years in which he operated as a franchisee, which includes a salary commensurate with earnings from his previous job and lost opportunities to invest or save the money he injected into the franchise.  Docket No. 186-1 at 8.  Da Silva then offsets that sum with any net profit or other benefits received by Plaintiffs for the franchise agreement period.  Id. at 7.  Accordingly, da Silva's testimony is relevant to Plaintiffs' calculation for rescission damages.

The fact that da Silva's but-for damages theory may not apply to a calculation for rescission damages is of no moment.  In addition to recission damages, Plaintiffs seek damages for several breach of contract and fraud claims.  Generally, under Massachusetts law, a plaintiff alleging fraud or breach of contract claims may receive the benefit of the bargain damages.  See Twin Fires Inv., LLC v. Morgan Stanley Dean Witter & Co., 445 Mass. 411, 425 (2005) (fraud); Situation Mgmt. Sys., Inc. v. Malouf, Inc., 430 Mass. 875, 880 (2000) (breach of contract).  These damages seek to put plaintiffs in the position they would have occupied but for the breach, calculated as the difference between the value received and the value promised.  Twin Fires Inv., LLC, 445 Mass. at 424 n.24.  Under da Silva's but-for damages theory, she calculates the difference between Plaintiffs' actual profit and losses and Defendants' financial projections for gross revenue and expenses.  Docket No. 186-1 at 9.  Testimony regarding this theory is integral to proving Plaintiffs' damages on their fraud and breach of contract claims.

Finally, under Massachusetts law, plaintiffs who have proved negligent misrepresentation are entitled to recover damages including the pecuniary loss caused by their reliance on the false

---

2003) ("Where parties have agreed to the choice of law, this court is 'free to forego an independent analysis and accept the parties' agreement'") (citation omitted).

information.  Young v. Sarah Alger, P.C., No. CIV.A. 10-11732-RWZ, 2012 WL 5921050, at *3 (D. Mass. Nov. 27, 2012)  (citing Danca v. Taunton Sav. Bank, 385 Mass. 1, 9 (1982)).  Such losses include "the difference between the value of what [the plaintiff] received and the purchase price plus any other pecuniary loss suffered as a consequence of their reliance on the misrepresentation."  Danca, 385 Mass. at 9.  Defendants argue that da Silva included no evidence regarding the worth of the franchise when Misiph purchased it.  Docket No. 186 at 7.  "[A] plaintiff normally can recover only those damages which he or she has proved to have incurred."  Bos. Children's Heart Found., Inc. v. Nadal-Ginard, 73 F.3d 429, 436 (1st Cir. 1996).  However, even if Defendants believe da Silva's testimony is insufficient to prove one specific metric of loss, that does not invalidate her entire testimony, particularly where that testimony is relevant to other categories of damages.  Because Plaintiffs bear the burden of proving each of their requested damages, da Silva's calculations are relevant to their various theories of recovery.  Accordingly, Defendants' motion on these topics is denied.

    2. *Methodology*

Defendants argue that da Silva's testimony should be excluded because her methodology does not include actual performance data and the data on which she relied is too narrow in scope.  Docket No. 186 at 5-7.  Specifically, Defendants criticize:  her reliance on an assumption that had Misiph continued as a franchisee, he would have operated his franchise for 10 years; her failure to clarify or quantify how franchisor support figured in her calculation; her failure to account for variables like COVID-19 or market conditions; and her failure to use internal tracking metrics in her calculations, among other criticisms.  Docket No. 186 at 5-6.  This Court finds that these challenges go to the weight of the evidence, not its admissibility.

The reliability of an expert's methodology "is a flexible inquiry, allowing for consideration of factors like whether the expert's methodology has been objectively tested; whether it has been subjected to peer review and publication; the technique's known or potential error rate; and whether the expert's technique has been generally accepted within the relevant industry." In re Amitiza Antitrust Litig., No. CV 21-11057-MJJ, 2025 WL 4036635, at *18 (D. Mass. Oct. 29, 2025) (quoting Lawes v. CSA Architects and Eng'rs LLP, 963 F.3d 72, 98 (1st Cir. 2020)). See Cohen v. Cohen, 125 F.4th 454, 462 (3d Cir. 2025). An expert's failure to include specific variables in a complex financial model does not render the testimony inadmissible so long as the underlying assumptions are those that experts make with some frequency. See Cummings v. Standard Reg. Co., 265 F.3d 56, 65 (1st Cir. 2001); Equal Emp. Opportunity Comm'n v. Texas Roadhouse, Inc., 215 F. Supp. 3d 140, 155 (D. Mass. 2016).

Here, da Silva clearly described the economic damages model she used, stating that she used a "widely accepted damages methodology." Docket No. 186-1 at 9. Defendants have provided no evidence to the contrary. Indeed, Plaintiffs represent that at his deposition, Herbst did not take any issue with da Silva's methodology. Docket No. 200 at 4 n.2 Further, the ten-year term used in the report is not unsupported speculation; rather, it is rooted in the initial term of the Franchise Agreement itself. See id. at 7; see also Docket No. 1-1 at 67. The other variables da Silva used are clearly described and supported by a detailed economic model within her report. See id. at 9, 22-23, 28. I therefore find that the admissibility standard has been met. Defendants of course may explore any further perceived shortcomings through cross-examination at trial. Accordingly, Defendants' motion on these topics is denied.

### 3. Legal Or Narrative Conclusions

Finally, Defendants argue that da Silva's opinions on the consistency of the FDD and Misiph's mitigation efforts are improper narrative or legal argument. Docket No. 186 at 7-8. Specifically, Defendants contend that: (1) da Silva's opinion that the FDD provided to Misiph is inconsistent with the financial information supplied during discovery is jury argument; and (2) her use of the word "materially" and her opinions regarding Misiph's duty to mitigate damages constitute legal argument. Docket No. 186 at 8.

The First Circuit has held that expert testimony that proffers legal conclusions is inadmissible. Deckers Outdoor Corp. v. Primark US Corp., No. 1:23-CV-10233-ADB, 2025 WL 1424586, at *8 (D. Mass. May 16, 2025). A "district court has broad discretion to exclude expert opinion evidence about the law that would impinge on the roles of the judge and the jury." Pelletier v. Main St. Textiles, LP, 470 F.3d 48, 54 (1st Cir. 2006). However, ultimate factual conclusions may be permissible. Deckers Outdoor Corp., 2025 WL 1424586, at *8 (expert testimony "is not objectionable just because [it] embraces an ultimate issue").

Here, da Silva's analysis involves a mathematical reconciliation of disparate financial data sets. Specifically, she calculates the average gross revenue per franchise in 2016 and 2017 from actual financial figures provided by Defendants and compares those figures with the April 20, 2017, FDD provided to Misiph, declaring the two figures "inconsistent." Docket No. 186-1 at 10-11. Da Silva also states that her calculation is "materially less" than those stated in the April 20, 2017, FDD. Id. at 11. This Court finds that an accounting of how these figures are derived and reconciled provides a technical framework that exceeds the common knowledge of a lay juror. Da Silva's opinion would help the trier of fact to understand the evidence and/or to determine a fact in issue. It is therefore admissible. That she characterizes the two figures as

"inconsistent" is a factual conclusion that this Court finds to be permissible. Nor have Defendants adequately explained how the term "materially" is a legal conclusion in this context. In her testimony, da Silva does not purport to render an opinion that Defendants knowingly made a false representation of material fact to induce Misiph to enter the franchise agreement. See Malaro v. Wilkie, 640 F. Supp. 3d 192 (D. Mass. 2022) (stating elements of fraudulent misrepresentation under Massachusetts law). Rather, she seeks to opine that her calculations differed significantly from the figures stated in the FDD.

This Court does, however, find that da Silva's opinion that "Misiph has a duty to mitigate damages and did, in fact, take reasonable, non-burdensome steps to avoid losses," Docket No. 186-1 at 11, must be excluded. While accountants may calculate any offset of earned income against claimed losses, they are not qualified to offer a legal conclusion regarding what the law requires of a plaintiff's mitigation efforts. Similarly, an expert accountant may not opine on the reasonableness of a plaintiff's mitigation efforts as this is a quintessential jury question. Rather, these facts may be offered to the jury, but not by da Silva in the form of expert opinion. The jury may then reach its own conclusion. Accordingly, da Silva is prohibited from offering an opinion regarding Misiph's mitigation efforts.

B. Edward Herbst

Plaintiffs seek to exclude Herbst's testimony, alleging that he is unqualified to offer damages opinions, his methodology is unreliable, and his analysis rests on inaccurate factual data. Docket No. 177 at 5, 6, 8. For the reasons discussed below, the motion is denied.

1. *Qualifications*

Plaintiffs argue that Mr. Herbst is unqualified because he has never testified as an expert and has admitted to lacking the competence to perform an independent damages model or

business valuation.  Docket No. 177 at 5-6.  As long as an expert is " 'qualified . . . by knowledge, skill, experience, training or education' . . . he need not have had first-hand dealings with the precise type of event that is at issue."  Microfinancial, Inc. v. Premier Holidays Int'l Inc., 385 F.3d 72, 80 (1st Cir. 2004) (citing Fed. R. Evid. 702).  As described above, Herbst, a CPA and CFF, has extensive experience in financial investigations.  His lack of history as a testifying expert or prior experience in franchise disputes and business valuation does not disqualify him from serving as a rebuttal expert.  An expert's training in a general field, in this case forensic accounting, is often sufficient to permit testimony on specialized sub-topics within that field.  See id. at 80-81 (thirty-three years of experience as federal agent specializing in financial fraud qualified expert to testify on tracking money in lock-box account); Gaydar v. Sociedad Instituto Gineco-Quirurgico y Planificacion, 345 F.3d 15, 24-25 (1st Cir. 2003) (general practitioner qualified to testify on ectopic pregnancies despite no specialization in obstetrics or gynecology).  Herbst's skills are directly applicable to his role here:  reviewing and critiquing the financial assumptions and mathematical integrity of da Silva's report.  His admission that he was not engaged to build his own model does not render him unqualified to analyze the flaws in another's model.  Accordingly, this Court finds that Herbst has met the threshold necessary to testify as an expert.

    *2. Methodology*

Plaintiffs further challenge Herbst's methodology, characterizing it as a subjective "arm-chair" critique that lacks an independent analytical framework.  Docket No. 177 at 8.  Specifically, they point to his deposition testimony where he agreed that his methodology was simply to "read and critique" the report of the opposing expert.  Docket No. 177-1 at 18 (65:8-10).

"While an expert may . . . testify solely on the basis of experience, he must explain how that experience leads to the conclusions reached, why that experience is a sufficient basis for the opinion, and that that experience is reliably applied to the facts." McGovern ex rel. McGovern v. Brigham & Women's Hosp., 584 F. Supp. 2d 418, 426 (D. Mass. 2008).  That an expert opinion is based on relevant professional experience rather than peer-reviewed studies is not a basis for exclusion because "[v]igorous cross examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." United States ex rel. Bawduniak v. Biogen Idec, Inc., No. 1:12-CV-10601-IT, 2022 WL 2662678, at *9 (D. Mass. July 8, 2022) (internal quotation marks and citation omitted).

Along with analyzing da Silva's report and its accompanying premises, methodology, and findings, Herbst's methodology consisted of reviewing documents such as the complaint, Defendants' amended counterclaims, portions of deposition transcripts, and copies of Misiph's 2019-2023 tax returns.  Docket No. 201-2 at 7.  Then, Herbst applied his forensic accounting background to identify what he characterized as incorrect or unstandardized variables in da Silva's calculations.  See, e.g., Docket Nos. 177-1 at 18-19(68:8-71:11); 201-2 at 9, 16.  His report indicates he was looking for foundational support for da Silva's opinion within the bounds of accounting principles.  The fact that he did not perform independent calculations to show exactly how a change in variables would move the final damages number may diminish the weight of his testimony, but it does not make his methodology inherently unreliable.  Accordingly, Herbst's testimony is not excludable on this basis.

### 3. Data Accuracy

Finally, Plaintiffs argue that Herbst's analysis is based on incomplete information. Docket No. 177 at 8. Specifically, Plaintiffs allege that Herbst reviewed only portions of Misiph's and Flick's depositions, which led Herbst to make incorrect assumptions and effected his analysis. Id. at 8-9. Plaintiffs also claim that Herbst misunderstood certain figures in da Silva's computations and that he used incorrect information to generate the chart contained in his report. Id. at 9.

In a deposition, Herbst acknowledged certain errors, such as his misclassification of commissions which were actually fixed franchise fees. Docket No. 177-1 at 13 (45:21-46:20), 20 (76:12-13). These admissions and other alleged inaccuracies go to the weight and credibility of his testimony. See, e.g., United States v. Bonds, 12 F.3d 540, 561 (6th Cir. 1993) ("Disputes about specific techniques used or the accuracy of the results generated go to the weight, not the admissibility[,] of the scientific evidence"); Donatelli v. UnumProvident Corp., 350 F.Supp.2d 288, 292 n. 4 (D. Me. 2004) ("UnumProvident's critique of mathematical errors contained in Dr. Fox's estimate of what Donatelli could have earned had he remained at UnumProvident goes to weight, not admissibility"); Computer Assocs. Int'l v. Quest Software, Inc., 333 F.Supp.2d 688, 694–95 (N. D. Ill. 2004) (mathematical and typographical errors in expert's report, which he admitted at his deposition, went to weight, not admissibility). A jury is capable of determining whether Herbst's critique remains valid despite these errors or if his misunderstanding of the underlying data renders his conclusions unpersuasive.

For all these reasons, Plaintiffs' motion is denied.

IV.	CONCLUSION

For the foregoing reasons, this Court denies Plaintiffs' motion and grants in part and denies in part Defendants' motion.

SO ORDERED.


*/s/ Jennifer C. Boal*
JENNIFER C. BOAL
UNITED STATES MAGISTRATE JUDGE