UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| GLENN MISIPH & <br> AASK SERVICES, LLC, <br><br> Plaintiffs, <br><br> v. <br><br> 360° PAINTING, LLC, f/k/a <br> 360° PAINTING, INC., <br> PREMIUM SERVICES BRANDS, LLC, <br> & PAUL FLICK, <br><br> Defendants. | ) <br> ) <br> ) <br> ) <br> )   Civil Action No. 22-11778-JCB <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) |

ORDER ON PLAINTIFFS' MOTION FOR SANCTIONS
[Docket No. 166]

April 13, 2026

Boal, M.J.

Pursuant to Rule 37 of the Federal Rules of Civil Procedure, Plaintiffs have moved for sanctions following Defendants' repeated failure to produce an adequately prepared Rule 30(b)(6) witness. For the following reasons, I grant in part and deny in part the motion.

I.     FACTUAL AND PROCEDURAL BACKGROUND

This action arises from a franchise relationship. The franchisee plaintiffs Glenn Misiph and AASK Services, LLC, (together "Plaintiffs") have asserted fraud and breach of contract claims against the franchisor defendants, 360 Painting LLC, Premium Service Brands LLC, and Paul Flick (together "Defendants"). 360 Painting has asserted counterclaims alleging trade secret misappropriation and a Defend Trade Secrets Act violation.

Paul Fick is the CEO of defendant Premium Service Brands. Paul Flick Deposition, May 2, 2025 ("Flick Dep.") at 23, lines 8. Premium Services Brands owns one hundred per cent of

360 Painting and is a member of the same.  Id. at 22, line 17-19; Docket Nos. 1 ¶ 4; 66 ¶ 4.  In his May 2, 2025, deposition, Flick testified that he had no office or title in connection with 360 Painting and was unaware if the entity ever had any employees or officers.  Flick Dep. at 22, line 22; 23, line 1.  However, during a subsequent 30(b)(6) deposition on May 28, 2025, he testified that he was, in fact, the manager of 360 Painting.  Paul Flick Deposition, May 28, 2025 ("Flick Dep. 30(b)(6)") at 17, line 15.  Although Premium Services Brands had over 100 employees, Flick was its sole officer.  Flick Dep. at 23, lines 16-17.

Plaintiffs allege that Defendants made various fraudulent misrepresentations in their marketing materials, the Franchise Disclosure Documents ("FDD"), and applications to two magazines, Entrepreneur and Inc. (the "Magazines"), for favorable rankings.  See Docket No. 155 at 2-4.

A.  The First Rule 30(b)(6) Order

On April 8, 2025, because Defendants had not provided a Rule 30(b)(6) witness for 360 Painting within the fact discovery deadline, Plaintiffs moved to compel Defendants to provide dates for the deposition.  Docket No. 126.  On April 14, 2025, this Court granted the motion and ordered Defendants to provide the requested dates on or before April 16, 2025.  Docket No. 129.

B.  The Second Rule 30(b)(6) Order

On May 1, 2025, all three Defendants filed a motion for a protective order, arguing that Plaintiffs' proposed Rule 30(b)(6) topics for 360 Painting were overly broad and ambiguous, and the notice did not provide enough time to prepare adequately a witness.  See Docket Nos. 137, 138.  On May 7, 2025, this Court ordered the parties to confer regarding the topics and file a status report if they needed further assistance from the Court.  See Docket No. 140.  Plaintiffs submitted a status report and a revised Rule 30(b)(6) notice that provided greater specificity for

2

many topics.  Docket No. 142.  In reliance on the revised notice, Docket No. 142-2, this Court then issued an order striking some of the topics.  Docket No. 145.  It also extended the fact discovery deadline to allow Defendants more time to prepare.  Id. at 4.  On May 28, 2025, Plaintiffs took 360 Painting's 30(b)(6) deposition pursuant to this Court's order.  See Docket Nos. 145 at 4; 155-1.  360 Painting designated defendant Paul Flick as its 30(b)(6) representative.  Id.

C.  The Third Rule 30(b)(6) Order

On June 24, 2025, Plaintiffs filed another motion to compel, which Defendants did not oppose, on the basis that Flick was not prepared for the deposition.  See Docket No. 155 at 6.  Specifically, Flick could not answer questions about the marketing materials, 360 Painting's applications to the Magazines, the failed 2020 minority investment efforts, the April 2017 FDD, and the making and dissemination of FDDs in 2017 and 2018.  See id. at 9-14.  Flick also testified that he relied on 360 Painting's former outside counsel, Paula Miller,[1] for the accuracy of the FDDs, and that former employee, Merry Dempsey, provided the information used to create the FDDs.  See, e.g., Docket Nos. 155-1 at 13; 168-1 at 5-6, 9.  Plaintiffs reached out to Miller.  Docket No. 155 at 15.  Per Plaintiffs, an attorney for Miller responded and indicated that Miller would be willing to discuss the FDDs and even provide testimony pursuant to a court order.  Id. at 15-16.  On August 5, 2025, this Court granted in part the motion to compel, and ordered that "Defendants either properly prepare Flick to be re-deposed or designate someone else as the 30(b)(6) witness" who was adequately prepared to answer the deposition questions.  Docket No. 158.

---

[1] Flick also testified at the Rule 30(b)(6) deposition that Paula Miller was a member of Premium Service Brand.  Flick Dep. 30(b)(6) at 20-21, lines 19-8.

D.   The Fourth Rule 30(b)(6) Order

On September 8, 2025, the parties filed a joint status report in which they reported that after this Court's August 5, 2025, order "counsel for 360 Painting has sought to schedule an interview with Paula Miller." Docket No. 162 at 1. In response, an attorney for Miller advised that Miller "would agree to answer any questions from 360 Painting or its counsel" so long as 360 Painting waived its attorney-client privilege. Id. at 2. However, in a subsequent communication, Miller's attorney stated that Miller "will not be participating in any interviews or calls, nor did she ever agree to do so." Id. Accordingly, on September 22, 2025, this Court issued the following order:

> 360 Painting's Rule 30(b)(6) deposition has been the subject of much motion practice. See, e.g., Docket Nos. 126; 129; 142; 155; 158. On August 5, 2025, I found that the 360 Painting's 30(b)(6) witness was unprepared and unable to answer basic questions on certain topics and ordered a re-deposition within 21 days. Docket No. 158 at 4-5. I denied, however, Plaintiff's request to depose Paula Miller, 360 Painting's former outside counsel, who was involved in the Franchise Disclosure Documents (FDD). Id. at 2, 5 n.1.
>
> 360 Painting still has not produced a 30(b)(6) witness on these topics for deposition. See Docket No. 162. Instead, Defendants maintain that many of the questions likely to be asked will implicate the attorney-client privilege. Id. at 4. They do not maintain that attorney Miller is the only person from whom answers to the outstanding Rule 30(b)(6) topics may be obtained. See id. at 4-5. Plaintiffs ask this Court, again, to authorize the deposition of attorney Miller. Id. at 4.
>
> A corporation may not use the attorney-client privilege as an excuse to mask its failure to comply with its obligation under Rule 30(b)(6) by producing a witness that was unprepared to bind the corporation. Here, regardless of any attorney-client privilege that may exist between 360 Painting and attorney Miller, 360 Painting still has the affirmative duty of producing an adequately prepared 30(b)(6) witness. See Calzaturficio S.C.A.R.P.A. s.p.a. v. Fabiano Shoe Co., 201 F.R.D. 33, 36 (D. Mass. 2001). The topics themselves, such as the making, dissemination, and accuracy of the FDDs, do not necessarily implicate privileged information. See Docket No. 158 at 4-5. That attorney Miller may have created the FDDs does not automatically make all information about the FDDs privileged. The attorney-client privilege "protects only those communications that are confidential and are made for the purpose of seeking or receiving legal advice." United States ex rel. Wollman v. Mass. Gen. Hosp., Inc., 475 F. Supp.3d 45, 63

4

(D. Mass. 2020) (internal quotation marks omitted).  Business advice is not necessarily protected.  See United States v. Windsor Cap. Corp., 524 F. Supp.2d 74, 81 (D. Mass. 2007).  Nevertheless, in the first instance, this issue is to be resolved between 360 Painting and attorney Miller.

360 Painting must produce an adequately prepared 30(b)(6) witness.  It is up to Defendants to satisfy that obligation.  If 360 Painting fails to do so or the witness is inadequately prepared, I will consider imposing sanctions, such as precluding Defendants from introducing evidence or testimony on these topics.  See Fed. R. Civ. P. 37(b)(2).

Docket No. 164.

Defendants made further attempts to obtain testimony from Miller, and a date was set for her deposition as a Rule 30(b)(6) witness.  Docket No. 166-3 at 2-3.  On October 29, 2025, counsel for Defendants stated that he would "prepare a deposition subpoena" for Miller.  Docket No. 166-3 1.  Approximately two hours before the deposition was set to begin, Defendants' counsel announced its cancellation and stated that Miller requested a deposition by written questions.  The Defendants stated that they would submit such questions by November 24, 2025, and they would be answered by December 12, 2025.  Docket No. 166-2 at 3-4.  Defendants' counsel offered that Plaintiffs could submit "counter-questions."  Id.  No new Rule 30(b)(6) deposition was ever held; nor were any written deposition questions answered.

Plaintiffs filed the instant motion on November 26, 2025, seeking sanctions for Defendants' failure to produce an adequate 30(b)(6) witness.  Docket No. 166 at 15-18.  On December 19, 2025, this Court held a hearing.  Docket No. 170.  To better evaluate Plaintiffs' request for sanctions, this Court ordered Plaintiffs to submit a chart detailing their requested factual findings and topics of preclusion as a means for sanctions, to which Defendants could respond (including explicitly the assertion of any privilege claims).  Docket No. 171 ("Defendants shall file their response, including any privilege claims . . .").  The Court further required Plaintiffs to link each request to information Plaintiffs sought but failed to obtain

5

through the Rule 30(b)(6) process.  Id.  Plaintiffs and Defendants filed responses on January 9 and 23, 2026, respectively.[2]  Docket Nos. 172, 176.  Defendants did not raise any claim of privilege.

II.      LEGAL STANDARD

Rule 37(b)(2)(A) authorizes several types of sanctions for failure to obey a discovery order, including:  deeming certain facts established; prohibiting the disobedient party from supporting or opposing designated claims or defenses; entering default judgment; or holding the party in contempt.  Fed. R. Civ. P. 37(b)(2)(A).  This rule also requires the court to order the disobedient party, its attorney or both, to pay reasonable expenses, including attorney's fees, incurred from the failure to comply, unless non-compliance was substantially justified, or the award would be unjust.  Fed. R. Civ. P. 37(b)(2)(C).  Default judgment, however, is a "drastic" sanction, "that runs contrary to the goals of resolving cases on the merits and avoiding 'harsh or unfair results.'"  Remexcel Managerial Consultants, Inc. v. Arlequin, 583 F.3d 45, 51 (1st Cir. 2009) (citations omitted).

In addition, a federal court possesses the inherent power to manage the litigation before it "to achieve the orderly and expeditious disposition of cases."  In re Petition for Order Directing Release of Records, 27 F.4th 84, 89 (1st Cir. 2022) (citing Link v. Wabash R.R. Co., 370 U.S. 626, 630-631 (1962)).  To that end, a court has the discretion to "fashion an appropriate sanction for conduct which abuses the judicial process."  Chambers v. NASCO, Inc., 501 U.S. 32, 44-45 (1991).  Sanctions are permissible when the court finds that the party "acted in bad faith, vexatiously, or for oppressive reasons."  Id. at 45-46.

---

[2] At the Court's request, on February 12, 2026, the parties filed a reformatted version of the responses to improve their legibility.  Docket No. 196.

6

III.    ANALYSIS

Plaintiffs contend they are entitled to sanctions because Defendants failed to comply with this Court's multiple Rule 30(b)(6) orders.  Docket No. 166 at 9-13.  Further, Plaintiffs argue that Defendants' non-compliance has substantially prejudiced their ability to litigate this case.  Id. at 13.  Plaintiffs initially requested default judgment in their favor, dismissal of Defendants' counterclaims, fourteen findings of fact, and preclusion of evidence on nine matters.  Id. at 16-18.  In a subsequent pleading, Plaintiffs expanded their request to thirty-eight proposed findings of fact and preclusion on thirty-four matters.  Docket No. 172.

A.  Rule 30(b)(6) Duty To Prepare

Defendants had an affirmative duty to produce an adequately prepared 30(b)(6) witness.  See Great Lakes Ins, SE v. Andersson, No. CV 20-40020-TSH, 2021 WL 7161838, at *2 (D. Mass. Oct. 14, 2021).  The obligation of a party to prepare its 30(b)(6) witness is incorporated into the general purpose of discovery to prevent "sandbagging."  See Echavarria v. Roach, Civ. Action No. 16-cv-11118, 2022 WL 1473604, *8 (D. Mass. May 10, 2022).  Where a Rule 30(b)(6) witness is unprepared to answer questions about subjects that were noted with particularity and reasonably available to the corporation, the purpose of the deposition "is completely undermined."  State Farm Mut. Auto. Ins. Co. v. New Horizont, Inc., 250 F.R.D. 203, 216 (E.D.Pa. 2008).  In other words, an inadequate Rule 30(b)(6) designation amounts to a refusal or failure to answer a deposition question.  Id. at *3.

A Court "cannot compel a corporation 'to designate a specific person' to be its Rule 30(b)(6) witness."  Great Lakes Ins., 2021 WL 7161838, at *3 (emphasis in original) (citing Wultz v. Bank of China, 298 F.R.D. 91, 99 (S.D.N.Y. 2014)).  Rather, this Court ordered

Defendants to produce a competent 30(b)(6) witness on two[3] separate occasions.[4]  <u>See</u> Docket

Nos. 158 at 4; 164.  Defendants failed to do so.[5]  Indeed, at oral argument on December 19,

2025, Attorney Mayo for the first time took responsibility for not adequately preparing Paul

Flick for the Rule 30(b)(6) deposition.

In addition, the Defendants asserted attorney Miller possessed the answers to the

outstanding questions and suggested those answers were privileged.[6]  Yet Defendants, who hold

the privilege, never offered to waive it.  <u>See</u> <u>Arkansas Tchr. Ret. Sys. v. State St. Bank & Tr. Co.</u>,

404 F. Supp. 3d 486, 507 (D. Mass. 2018) ("the attorney-client privilege belongs to the client,

not the attorney, and, therefore, the client must invoke it) (citing <u>Cavallaro v. United States</u>, 284

F.3d 236, 245 (1st Cir. 2002)).  It is unlikely that much of the information pertaining to business

decisions was privileged in the first place.  Defendants did not assert any privilege with respect

to the subject questions asked at the deposition.  In addition, Plaintiffs reported that Defendants

---

[3]  The Court's first two orders regarding the Rule 30(b)(6) deposition do not pertain to the competency of the Defendants' Rule 30(b)6) deponent but are important in terms of the history of this issue before the Court.

[4] For this reason, Defendants' characterization of the dispute is disingenuous at best.  Defendants assert that Plaintiffs' motion seeks sanctions for Defendants' failure to procure testimony from Miller.  Docket No. 168 at 3.  Rather the Plaintiffs seek sanctions for the Defendants' failure to properly prepare a Rule 30(b)(6) witness despite two court orders to do so.

[5] Although Defendants made attempts to obtain testimony from Miller, the scheduled deposition was canceled on short notice.  <u>See</u> Docket Nos. 166-2 at 3-4; 166-3 at 2-3.  Defendants advised Plaintiffs that Miller would instead perform the deposition by written questions, which would be submitted by December 12, 2025.  Docket No. 166-2 at 3-4.  Miller never answered any written questions.  In addition, a deposition by written questions would not appear to satisfy the Defendants' obligations as there is no indication that the parties stipulated to that procedure.  <u>See</u> Fed.R.Civ.Pro.31(a)(2)(A).

[6] Defendants did not, until threatened with sanctions, offer that any other person possessed the relevant information even though Paul Flick testified that Merry Dempsey possessed some of the relevant information.

produced no emails either to or from Paula Miller concerning 360 Painting's FDDs, nor did they list any communications with Paula Miller in a privilege log.  See Docket No. 166 at 7 n.1. Despite a specific opportunity to do so, see Docket No. 171, Defendants failed to assert attorney-client privilege as a defense.

Indeed, it appears unlikely that the attorney-client privilege or attorney work product would apply to the information sought.  Because the attorney-client privilege constricts the truth-finding process, the privilege should be narrowly construed.  Conexus Metals, LLC v. CRH Canada Group, Civil Action No. 2:24-cv-1770-AJS, 2025 WL 4355750, *11 (W.D. Pa. December 2, 2025).  "Facts are discoverable, the legal conclusions regarding those facts are not. A litigant cannot shield from discovery the knowledge it possessed by claiming it has been communicated to a lawyer; nor can a litigant refuse to disclose facts simply because that information came from a lawyer."  Id. (quoting Rhone-Poulenc Rorer Inc. v. Home Indem. Co., 32 F.3d 851, 864 (3d Cir. 1994).  In addition, in a corporate setting, determining whether a communication was made for business or legal purposes is often difficult.  Id.  For example, a "company's decision on how to market or advertise a product, or what conditions of sale should apply is not privileged because although it is based on legal advice, [the communication] is primarily a business policy."  Id. (internal citations and quotations omitted).

Moreover, Defendants' late-stage disclosure on December 19, 2025, of an alternative witness – offered only after this Court raised the possibility of sanctions – further demonstrates Defendants' lack of transparency.  Indeed, just nine days earlier in their December 10, 2025, brief, Defendants asserted that "Miller is the only person from whom the answers to the outstanding Rule 30(b)(6) topics may be obtained."  Docket No. 168 at 9.  Defendants have failed to obey orders to provide or permit discovery in violation of Rule 37(b)(2)(A).

Consequently, because Defendants have persistently failed to meet their discovery obligations despite multiple warnings, sanctions now appear to be both appropriate and necessary.

B. Sanctions

"In determining the appropriate sanction, if any, a court should 'consider the totality of events and then choose from the broad universe of available sanctions in an effort to fit the punishment to the severity and circumstances of the violation.'" United States v. Pfizer, Inc., 188 F. Supp. 3d 122, 136-137 (D. Mass. 2016) (quoting Young v. Gordon, 330 F.3d 76, 81 (1st Cir. 2003)).  The First Circuit has listed several substantive and procedural factors a court should consider when reviewing a Rule 37 motion for sanctions.  The substantive considerations include "the severity of the discovery violations, legitimacy of the party's excuse for failing to comply, repetition of violations, deliberateness of the misconduct, mitigating excuses, prejudice to the other party and to the operations of the court, and adequacy of lesser sanctions." AngioDynamics, Inc. v. Biolitec AG, 780 F.3d 429, 435 (1st Cir. 2015).  The procedural considerations include "whether the district court gave the offending party notice of the possibility of sanctions and the opportunity to explain its misconduct and argue against the imposition of such a penalty."  Id.

Considering the totality of the record, this Court finds that Defendants' efforts to prepare and produce a Rule 30(b)(6) designee pursuant to this Court's August and September 2025 orders at best lacked seriousness and at worst constituted outright gamesmanship.  First, despite its obligation to provide an appropriate witness, 360 Painting designated defendant Flick as its 30(b)(6) representative without, as Defendants' counsel has acknowledged, properly preparing him.  Docket No. 155-1.  Flick did not confer with other employees or officers, review pertinent documents, nor have extensive meetings with his own counsel or any meeting with Miller.  Flick

Dep. 30(b)(6) at 16-17, lines 9-1.  At the deposition, Flick failed to answer questions including those about company marketing materials shown to Plaintiffs during the sales process, 360 Painting's applications to magazines to obtain favorable business rankings, the failed 2020 minority investment efforts, the April 2017 FDD, and the making and dissemination of FDDs in 2017 and 2018.  See Docket No. 155 at 9-14.  These areas of inquiry were properly noticed topics and were all central to Plaintiffs' theory of the case.  Accordingly, the lack of preparation was willful.

Flick indicated that he relied on 360 Painting's former outside counsel, Paula Miller, for the accuracy of the FDDs.  See, e.g., Docket No. 155-1 at 13.  However, despite Miller's initial indication that she would be willing to discuss the FDDs and even provide testimony pursuant to a court order, Defendants failed to either produce Miller or provide an alternative 30(b)(6) witness.  Docket No. 155 at 15-16.  Defendants maintain that Miller is unwilling to participate either as a 30(b)(6) witness or in preparing another for such testimony unless 360 Painting waives its attorney-client privilege with respect to each question.  Docket No. 168 at 9.  As this Court has already stated, the "topics themselves, such as the making, dissemination, and accuracy of the FDDs, do not necessarily implicate privileged information."  Docket No. 164.  Accordingly, Defendants' representation that they "should not be forced to waive any claim of privilege in hopes of securing" Miller's testimony is not a valid excuse, particularly given the lack of evidence that a privilege protected the disclosure of information in the first place.  There were no relevant emails between Flick and Miller produced in discovery nor identified in a privilege log, and the Defendants failed to assert any privilege as a defense to Flick's unresponsiveness to questions when specifically given the opportunity to do so.  In addition,

11

there is no protection of facts simply because those facts may have been communicated to a deponent by a deponent's counsel. State Farm, 250 F.R.D. at 214.

This Court finds that Plaintiffs relied to their detriment on Defendants' representations that they would secure the missing information. Defendants' non-compliance, including, at a minimum, undeveloped claims of privilege, has limited Plaintiffs' ability to litigate the case, particularly with respect to the fair examination of a potential 30(b)(6) witness. Defendants cannot pick which discovery they respond to and ignore court orders directing them to provide or permit discovery. The failure of the Defendants to provide noticed Rule 30(b)(6) testimony leaves an evidentiary gap justifying an appropriately tailored sanction. Given the ample notice provided by this Court in its September 22, 2025, order that sanctions may result and an opportunity for Defendants to provide an appropriate witness, this Court finds sanctions are appropriate.

However, this Court denies as too drastic Plaintiffs' request for a default judgment in favor of the Plaintiffs on all counts of the complaint and also for a dismissal with prejudice on Defendants' remaining counterclaims. Rather, it finds that evidentiary sanctions are more appropriate and tailored to the problems addressed herein. In particular, preclusion of evidence and/or permissive adverse-inference instructions help level the evidentiary playing field by allowing a jury to presume the missing evidence would be unfavorable to the party who, knowing it was relevant to some issue in the case, failed to produce it. Sanctions less severe would not be effective in this situation for all the reasons described above. In addition, there is no time for another Rule 30(b)(6) deposition – a jury trial in this case is scheduled to begin on May 4, 2026, after repeated discovery delays.

In terms of tailoring an appropriate evidentiary sanction, this Court has carefully considered the Rule 30(b)(6) topics, the Rule 30(b)(6) deposition questions and answers by Mr. Flick, the Plaintiffs' request for findings of fact and exclusion of evidence, and the Defendants' position with respect to those findings. See Docket Nos. 166, 196-1. With respect to many of the Plaintiffs' requests, this Court declines to adopt the specific requests because it either finds the Defendants' position persuasive, the Plaintiffs seek a finding that is not supported by the transcript, or the finding is not otherwise appropriate to make. After such analysis, this Court is considering the following evidentiary sanctions. Nevertheless, given the nature of the sanctions, this Court provides the Defendants with an opportunity, not to relitigate the underlying cause of the sanctions, but rather to address the exact sanctions described herein:

1. *Defendants' reliance on Paula Miller, Merry Dempsey or others*. As an initial matter, Paul Flick testified many times that counsel, Paula Miller, or Merry Dempsey, had the knowledge necessary to provide answers sought by questions properly posed at his Rule 30(b)(6) deposition. He could provide no further information. This was error. Having failed to provide a knowledgeable corporate designee, and instead producing one who deflected responsibility for knowledge to others without properly garnering the knowledge in preparation for the deposition, the Defendants are precluded from calling Paula Miller or Merry Dempsey at trial. In addition, given the limited evidence that any defendant communicated with Paula Miller or other counsel, Defendants are precluded from offering any evidence that they relied on an attorney's advice, other than as stated in the testimony provided by Flick. Should Defendants' witnesses testify in accordance with the Rule 30(b)(6) testimony that 360 Painting or Paul Flick relied on counsel, then this Court will consider an adverse inference instruction to the jury; specifically, because

the Defendants have failed to provide evidence of the alleged advice, the jury will be instructed to assume that such evidence would be adverse to the Defendants' interests.

2.  *The Preparation, Dissemination, And Accuracy Of The FDDs In 2017 And 2018*.

At the Rule 30(b)(6) deposition, Mr. Flick testified that he did not know or did not do anything to determine the accuracy of certain figures and representations in the FDDs including:  the average gross sales number in the April 20, 2017 FDD; the highest gross sales number for a franchisee in the April 20, 2017 FDD; whether there was written substantiation of the financial performance representations in Item 19 of the April 20, 2017 FDD; whether there were omitted litigation matters from the April 20, 2017 FDD; and whether 360 Painting had any practices or procedures that governed the issuance of FDDs in 2017 and 2018.  These were non-answers to questions of properly noticed topics that Mr. Flick should have been prepared to answer.[7]  Accordingly, 360 Painting is limited to Mr. Flick's answers.  In addition, this Court is considering an adverse inference instruction that 360 Painting has not provided further evidence with respect to these facts, and therefore the jury may draw an inference that any such evidence would be adverse to 360 Painting's position in this litigation.

3.  *Marketing And Promotional Accuracy*.  With respect to the April 10, 2018, webinar and the Discovery Day materials, Mr. Flick testified that he lacked knowledge about the accuracy of the numbers and suggested that questions regarding the same be directed elsewhere.  He was therefore improperly prepared to answer this question that pertained to a properly noticed topic.[8]  Accordingly, 360 Painting is limited to his answer, and this

---

[7] See, e.g., Docket No. 142-1 (Topics 2, 4).

[8] See, e.g., Docket No. 142-1 (Topic 5).

14

Court is considering an adverse inference instruction that 360 Painting has provided no further evidence with respect to the accuracy of these numbers and therefore the jury may draw an inference that any such evidence would be adverse to 360 Paintings' interest in this litigation.

4.  *Magazines*.  With respect to submissions to Entrepreneur and Inc. magazines, Mr. Flick testified that he could not provide any information about the submissions, but Merry Dempsey could.  Mr. Flick, however, should have consulted with Ms. Dempsey prior to the deposition.  He was unprepared to answer this question on a properly noticed topic.[9] Accordingly, 360 Painting is limited to Mr. Flick's testimony and this Court is considering an adverse inference instruction that because 360 Painting has not provided any other evidence regarding the accuracy of the submissions, the jury may draw an inference that any such evidence would be adverse to 360 Painting's interests.

Defendants may respond within one week, or by April 20, 2026, as to why this Court should not impose the specific sanctions set forth in this Order.[10]  Plaintiffs may then respond one week thereafter, or by April 27, 2026.  I also order Defendants to pay reasonable attorney's fees for work done in connection with the September 8, 2025, status report (Docket No. 162) and any work since September 8, 2025, having to do with the Rule 30(b)(6) depositions.  The Plaintiffs must file an application for fees with supportive documentation by April 27, 2026.  Defendants may file an opposition two weeks thereafter, or by May 11, 2026.

---

[9] See, e.g., Docket No. 142-1 (Topic 17).

[10] This is not an opportunity for Defendants to relitigate the imposition of sanctions.  Any response must be limited strictly to the wording and scope of the sanctions detailed in items one through four above.

IV.    ORDER

For the foregoing reasons, this Court grants in part and denies in part Plaintiffs' request

for sanctions.

SO ORDERED.

/s/ Jennifer C. Boal
JENNIFER C. BOAL
UNITED STATES MAGISTRATE JUDGE